In the Matter of the Application of EMERSON STANLEY BAILEY, Petitioner, for an Order to Compel THOMAS J. MANGAN and Others, Constituting the Board of Regents of the University of the State of New York, Respondents, to Indorse His Massachusetts, New Jersey, District of Columbia, Missouri, West Virginia and Ohio Licenses or Diplomas, Permitting Him to Practice Medicine and Surgery in the State of New York, Pursuant to Sections 51 and 1259 of the Education Law of the State of New York.

Third Department, January 8, 1941.

*Abram M. Frumberg* [*Jacob Freed Adelman* of counsel], for the petitioner.

*Ernest E. Cole* [*Charles A. Brind, Jr.*, and *Joseph Lipsky* of counsel], for the respondents.

HEFFERNAN, J. This proceeding was instituted before the Albany Special Term of the Supreme Court to compel the respondents, constituting the Board of Regents of the University of the State of New York, to indorse petitioner's licenses or diplomas permitting him to practice medicine and surgery in the State of New York pursuant to sections 51 and 1259 of the Education Law. The Special Term ordered the proceeding transferred to this court for disposition.

There are no disputed facts. On May 9, 1905, petitioner filed an application with the Education Department for a license to practice medicine in this State. His application disclosed that he was born on July 16, 1879, and graduated from the Leonard Medical College, a department of Shaw University of Raleigh, N. C., on April 13, 1905. On May 11, 1905, he was notified that he would not be permitted to take the examination because Leonard Medical College, from which he was graduated, was not registered with the Department of Education of the State of New York and a graduate of that institution could be credited with but two years' study of medicine and that petitioner in order to meet the requirements of this State would have to study two additional years in a registered medical school and obtain a degree therefrom before he would be qualified to enter the New York State medical licensing examination. The record conclusively shows that petitioner's professional record and qualifications never included graduation from an approved or registered medical school. The medical school from which he was graduated was inspected and approved by the officers of the State Department of Education at the time of his graduation for only two years of medical instruction.

Between 1905 and 1939 petitioner has tried at different times to have the Department of Education either permit him to take an

examination to establish his fitness to practice medicine or to indorse the license issued to him by other States. Apparently in the intervening years the petitioner secured licenses to practice medicine in the States of Massachusetts, New Jersey, West Virginia, Missouri, Ohio and the District of Columbia.

In March, 1937, petitioner applied to the Department of Education for a license to practice medicine by examination or indorsement. In that application the only institution in which he studied medicine after his graduation from Leonard Medical College appears to be as an interne in Freedmen's Hospital, Washington, D. C. In response to that application he was informed by the Department of Education that in view of the fact that at the time of his attendance and graduation the Leonard Medical College was not registered by the Department for admission of its graduates to the New York State licensing examination he was not eligible for a medical license in this State. In June, 1939, there was filed with the Department another application by petitioner for the indorsement of his licenses in the various States in which he is authorized to practice. This application also indicates no additional medical education to that which he possessed when he applied for a license in this State in 1905. The examining boards of none of the States in which he is authorized to practice have been registered by the Regents. A reciprocity agreement was made with Ohio in 1907 and with New Jersey in 1912. However, in these agreements New York State has reserved to itself the right to examine into the preliminary and professional education of applicants.

On August 3, 1939, petitioner's attorney was notified that his application would not be entertained and that petitioner's medical record was not acceptable. Thereafter the entire record was presented to the Board of Regents for action and on December 15, 1939, the Regents denied the application in the following resolution:

" Voted, That the application of Dr. Emerson S. Bailey, St. Louis, Mo., for the indorsement, under the provisions of section 51 of the Education Law, of his Massachusetts, New Jersey, West Virginia, Missouri, District of Columbia or Ohio license to practice medicine be denied."

The above determination is the subject of this review. Petitioner's application for the indorsement of his licenses in the various States referred to is based on subdivision 3 of section 51 of the Education Law. That subdivision provides as follows:

" 3. And the Regents shall have further power to indorse a license issued by a legally constituted board of examiners in any other State or country upon satisfactory evidence that the require-

ments for the issuance of such license were substantially the equivalent of the requirements in force in this State when such license was issued, and that the applicant has been in the lawful and reputable practice of his profession for a period of not less than five years prior to his making application for such indorsement. When the evidence presented is not satisfyingly sufficient to warrant the indorsement of such license, the Board of Regents may require that the candidate for indorsement shall pass such subjects of the licensing examination specified by statute or Regents' rule as should be required of the candidate to establish his worthiness to receive such indorsement."

This paragraph authorizes indorsement, *first*, when the Board of Regents determines that there is satisfactory evidence to show that the requirements for the issuance of the license were " substantially " the equivalent of the requirements in force in this State when such license was issued, upon its appearing that the applicant has been in the practice of his profession for a period of not less than five years, and *second*, if the evidence presented does not show satisfactorily that there is the required substantial equivalency, the Board of Regents may indorse after an examination to determine the fitness of the candidate. The statute by its terms imposes upon the Board of Regents the power to exercise a judicial discretion. The Board should be satisfied from the evidence adduced by the candidate that at the time when the license was issued to him by the board of another State or country, the requirements in such State or country. for the issuance of such license were substantially the same as the requirements in this State. If the evidence as to this is not satisfactory the Board may in its discretion permit the candidate to take an examination " to establish his worthiness to receive such indorsement." " The obvious purpose of the statute was to permit the Board of Regents to indorse a license issued by the licensing board of another State or country in those cases in every profession in which the applicant is unable to meet the letter of the requirements of the statute governing admission to the profession in which a license is sought but possesses essentially the same or equivalent qualifications necessary for a license. The power herein granted is a limited one, remedial in its nature, and must be exercised by the Regents with caution and with due regard to the statutes regulating the practice of medicine in this State. Certainly the Regents may not through the exercise of the power granted by this statute indiscriminately indorse foreign medical licenses. The Legislature has provided a way for these applicants to practice medicine. It was never intended that they should be allowed to enter by indorsement. Before the Regents can legally

indorse a foreign license they should be satisfied that the applicant has substantially met all requirements. The Regents may not legally, through the exercise of the remedial power conferred by this section, admit to the profession those who have not met the requirements the Legislature has established. If they err at all, it should be on the side of the protection of the public from unworthy and inefficient practitioners. This section was only intended by the Legislature to apply to exceptional cases where the merit of the applicant is clearly established to the satisfaction of the Regents. The burden of proof is upon the applicant. He must not only prove that he graduated from certain institutions but he must also prove to the satisfaction of the Regents that these institutions are substantially the equivalent of the New York schools. He must not only prove that he has a foreign license but he must also prove to the satisfaction of the Regents that the requirements for that license were substantially the same as in New York." (*Matter of Levi* v. *Regents of University of State*, 256 App. Div. 444; affd., 281 N. Y. 627.)

In the present case there is no proof before the Regents that the standards in the foreign jurisdictions in which the petitioner received his license were substantially the same as those existing in the State of New York. As a matter of fact, the evidence specifically shows that the standards of those jurisdictions when they admitted the petitioner to the examinations or indorsed his license from other jurisdictions were far lower than the standards in the State of New York, and the requirements for the license were far from being essentially the same as those in New York.

The petitioner's application for indorsement of his licenses was addressed to the discretion of the Regents and the courts will not interfere in the exercise of that discretion. (*Matter of Levi* v. *Regents of University of State, supra.*)

Petitioner's application for indorsement of his licenses under section 1259 of the Education Law also was addressed to the discretion of the Regents and they cannot be compelled by the courts to exercise this discretion in his behalf. The pertinent part of section 1259 of the Education Law, in effect at the time that the Board of Regents made the determination complained of, provided as follows:

"Applicants examined and licensed by other State examining boards registered heretofore by the Regents or hereafter by the department as maintaining standards not lower than those provided by this article * * * may without further examination, on payment of twenty-five dollars to the department and on submitting such evidence as they may require, receive from them an endorse-

ment of their licenses or diplomas conferring all rights and privileges of a license issued by the department after examination. The Commissioner of Education may in his discretion on the approval of the Board of Regents indorse a license or diploma of a physician from another State, or country, provided the applicant has met all the preliminary and professional qualifications required for earning a license on examination in this State, has been in reputable practice for a period of ten years, and has reached a position of conceded eminence and authority in his profession."

It will be observed that this statute only permits the Regents to indorse licenses from other States which have been registered by the Regents as maintaining standards not lower than those in the State of New York. It will be further observed that the power to indorse is discretionary and not mandatory and that the Regents and the Department may require such evidence as they see fit as to the personal, preliminary and professional qualifications of the applicant. The indorsement is permissive. It may or may not be granted by the Regents dependent upon the sufficiency of the evidence which has been submitted by the applicant, bearing upon his personal and professional qualifications or other matters pertaining to his fitness to practice medicine in this State. If the State Board from which an applicant presents his license for indorsement has not been registered by the Regents or the Department, then they have no power under this act to indorse the license. The Regents and the Department may not register the examining board of another State unless such examining board maintains standards not lower than those in the State of New York. None of the State examining boards involved in this proceeding has been registered by the Regents or the Department.

Section 1259 of the Education Law also grants to the Commissioner of Education on the approval of the Board of Regents the power to indorse in his discretion a license or diploma of a physician from another State provided the applicant has met all the preliminary and professional qualifications required for earning a license on examination in this State and has reached a position of conceded eminence and authority in his profession. That statute by its terms grants to the Commissioner of Education on the approval of the Board of Regents the power to exercise judicial discretion. The obvious purpose of the statute is to permit the Commissioner of Education in his discretion on the approval of the Board of Regents to indorse a license or diploma issued by another State provided the applicant has met all the preliminary and professional qualifications required for earning a license on examination in this State and providing also that the Commis-

sioner of Education and the Board of Regents are in agreement that the applicant has reached a position of conceded eminence and authority in his profession. The statute is permissive and not mandatory. Under section 1259 the Commissioner of Education and the Board of Regents are vested with a discretionary power. The Commissioner of Education and the Board of Regents may not indorse a license or diploma of a physician from another State on the ground that he has reached a position of conceded eminence and authority in his profession, unless he has met all the preliminary and professional qualifications required for earning a license on examination in this State.

The Special Term erroneously transferred the proceeding to this court. It should have disposed of the cause itself. No issues under subdivisions 6 and 7 of section 1296 of the Civil Practice Act are presented. The determination was not made as the result of a hearing held at which evidence was taken pursuant to statutory discretion. The sections of the Education Law involved do not require the Board of Regents to conduct a hearing contemplated by section 1296 of the Civil Practice Act. Indeed no such hearing was conducted. Although the proceeding was erroneously transferred to this court we are authorized to dispose of the issues. (*Matter of City Ice & Fuel Co.* v. *Public Service Comm.*, 260 App. Div. 537.)

The proceeding should be dismissed, without costs.

HILL, P. J., CRAPSER, BLISS and FOSTER, JJ., concur.

Proceeding dismissed, without costs.